**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **GENNARO RAUSO,** | : | **CIVIL ACTION** |
| **Individually and as assignee for Elliotte** | : | |
| **B. Brown, Twenty Six Schappert** | : | |
| **Terrace, LLC, and D & B Property** | : | **No. 13-cv-693** |
| **Investors Corp.,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BARBARA FEIN, et al.,** | : | |
| **Defendants.** | : | |

**M E M O R A N D U M**

Stengel, J.                                    May 11, 2015

This action relates to a mortgage foreclosure on a property located at 218 E. Wood Street in Norristown, Pennsylvania. The plaintiff alleges over two hundred statutory and common law violations by the defendants—the mortgage holder and agents of the mortgage holder involved in the foreclosure of the Wood Street Property. The mortgage foreclosure action is still pending in state court. The defendants move to dismiss this case under the <u>Younger</u> abstention doctrine. For the reasons stated below, I will grant their motion in part and deny it in part.

## I.      BACKGROUND

### a.  Allegations in This Action[1]

---

[1] The information contained in this section is taken from the amended complaint unless otherwise noted. <u>See</u> Doc. No. 18.

Gennaro Rauso brings this case as the alleged "assignee" of Elliotte Brown, Twenty Six Schappert Terrace, LLC (TSST), and D & B Property Investors Corporation (D & B). Brown, TSST, and D & B were each allegedly the owners of 218 E. Wood St. in Norristown, Pennsylvania at different points from 2001 to the present.

Elliotte Brown purchased the Wood Street property on October 12, 2001. He obtained a mortgage on the property for $56,000 from BNC Mortgage, Inc. The mortgage named Mortgage Electronic Registration Systems, Inc. (MERS) as the mortgagee and BNC's nominee. The mortgage was recorded on October 31, 2001. Fairbanks Capital Corporation serviced the mortgage from October 12, 2001 to March 23, 2003. Thereafter, Select Portfolio Servicing (SPS) became the servicer. MERS assigned the note and mortgage to US Bank.

Brown first fell delinquent on his mortgage payments on August 1, 2002. On September 24, 2002, Fairbanks sent Brown a notice of intent to foreclose as required by Pennsylvania's Act 91, 35 P.S. § 1680.401c. On October 26, 2002, he entered into a Forbearance Agreement with Fairbanks.[2] Brown again went into default. On February 22, 2003, Attorney Barbara Fein filed a mortgage foreclosure complaint on behalf of US Bank (US Bank, et al. v. Brown, Montco. Pa. No. 2003-2538). On May 27, 2003, Brown seemed to have cured his deficiencies and the court entered a "settle, discontinue and end" order for that first foreclosure action.

---

[2] See Doc. No. 30, Ex. M-3.

2

Brown again fell behind on payments. On March 30, 2005, SPS sent Brown a second intent to foreclose notice required by Act 91. On June 24, 2005, Martha Von Rosenthiel, an attorney for US Bank, filed a second foreclosure complaint (US Bank v. Brown, Montco. Pa. No. 2005-16950).[3]

On October 19, 2005, Brown allegedly signed, acknowledged, and delivered a durable power of attorney (POA) to the plaintiff Gennaro Rauso, appointing him as Brown's agent-in-fact. Brown appeared to be living in Arkansas at that time.[4] The POA was recorded on December 9, 2005 with the Montgomery County Recorder of Deeds.

That same day, Brown, Rauso, and D & B allegedly entered into an agreement for the purchase/sale of the Wood Street property. As part of this agreement, D & B took title of the property.[5] Brown allegedly notified SPS of the transfer and the title change was recorded on December 7, 2005. Rauso allegedly made numerous repairs to the property after D & B took ownership. He did so in both his personal capacity and as an agent of D & B, of which he was the sole shareholder and officer.

On March 23, 2007, Rauso, acting as Brown's agent-in-fact, negotiated and entered into a forbearance agreement with SPS on Brown's behalf. D & B made a payment of $11,125.00 to SPS to cure delinquencies on the mortgage. D & B continued to make monthly payments of $2105.58 until December 2009. As part of this arrangement, Rauso notified SPS that all future notifications for Brown should be sent to

---

[3] See also Transcript of Motion to Intervene, Doc. No. 30, M-9 at 22.

[4] Brown's signature regarding this POA was notarized in St. Francis County, Arkansas. See Doc. No. 30, Ex. M-7.

[5] According to this Deed transfer, Brown's signature was notarized in St. Francis County, Arkansas. See Doc. No. 30, Ex. M-3. The property was transferred for $1.00 to D & B.

712 Ash Ave., Collingdale, PA 19023. On May 11, 2009, Rauso and/or D & B made sufficient payments on the property to satisfy the judgment in the second foreclosure action. This action was vacated, discontinued, and ended.

From December 2009 to December 2011, Rauso allegedly made payments on the Wood Street property. These payments of $600 to $700 a month were either Rauso's personal funds or made through D & B. The costs paid as part of the forbearance agreement included fees and costs incurred as part of the first and second foreclosure actions. Fairbanks and SPS allegedly charged Brown impermissible fees and costs related to the first foreclosure action.

On May 4, 2010, the Wood Street property was transferred from D & B to TSST.[6] The deed was recorded that same day. TSST allegedly notified SPS. In August 2010, Rauso notified SPS in writing that Brown's new address was 957 Rt. 33, Suite 146, Hamilton Square, NJ.[7] On October 15, 2010, Rauso then allegedly purchased the Wood Street property from TSST.

On February 8, 2012, Fein sent Brown a third notice of intent to foreclose as required by Pennsylvania Act 6, 41 P.S. § 403. Four copies of the notice were sent to four separate addresses by certified mail. Three of the notices were addressed to Elliotte Brown at three different addresses: the Wood Street address, another Norristown address,

---

[6] The defendants claim that the conveyances from Brown to D & B then from D & B to TSST were made without their knowledge or consent. See Doc. No. 30-1 at 13.

[7] According to the defendants, this address is actually a UPS Store. The "Suite" is, in fact, a mailbox. See Doc. No. 30-1 at 13.

and a Forrest City, AR address.[8] One notice was addressed to TSST at the Collingdale address. Allegedly the notice sent to the Collingdale address was never delivered.  On March 26, 2012, Fein on behalf of US Bank filed a third foreclosure complaint against Brown (US Bank v. Brown, et al., Montco. Pa. No. 2012-7312).[9]

On January 23, 2013, Rauso, as Brown's agent-in-fact, "assigned himself personally all of Brown's rights, title, interests claims and defenses of every kind and nature whatsoever." On this same day, he also assigned himself all of TSST's rights, title, interests, etc. as TSST's agent-in-fact and its sole shareholder/officer. On February 4, 2012, Rauso—as sole stockholder, President, Vice President, and Treasurer of D & B— assigned himself personally all of D & B's rights, title, and interests.

On January 29, 2013, Rauso filed a motion to intervene in the third foreclosure action. On February 6, 2013, he filed this *pro se* action, in both his personal capacity and in his role as assignee for Brown, TSST, and D & B, against Fein, Von Rosenthiel, US Bank, Fairbanks, SPS, MERS, and BNC. He asserts 205 counts under 12 causes of action.[10] Two causes of action are based on federal law: the Fair Debt Collection

---

[8] See Doc. No. 30, Ex. M-3 at 69-75. The copy sent to the Forrest City, AR 72335 address was signed for by a Renee Brown. Id. at 76.

[9] The Amended Complaint specifically asks this court to take judicial notice of this action. See Doc. No. 18 at 3, ¶ 12.

US Bank had empowered SPS to act as its agent by way of a limited power of attorney. This document appears to have been recorded in Utah in 2002 and then in Montgomery County on February 9, 2012. See Doc. No. 30, Ex. M-3 at 65. Allegedly this POA only authorized Fairbanks to act on US Bank's behalf, not on SPS's.

[10] Counts 1-7, 16-20, 26-32, 40, 42-46, 52-56, 62-65, 72-74, 78-82, 88-168, 180-83, 191-92, 195-96, 197, and 200-05 are made as Brown's assignee. Counts 8-15, 21-25, 33-39, 41, 47-51, 57-61, 66-71, 75-77, 83-87, 187-88, and 193-94 are made as TSST's assignee. Counts 179, 189-190, and 193-94 are made on behalf of D & B. Counts 198-99 are made on behalf of Rauso himself.

Practices Act (FDCPA) and the Truth in Lending Act (TILA).[11] The remaining causes of action are based in state law: Pennsylvania's Fair Credit Extension Uniformity Act (FCEUA), 73 P.S. § 2270.1, et. seq.; Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1, et seq.; Act 6, 41 P.S. § 101, et. seq.; breach of contract; negligence/trespass; accounting at law; quiet title; and fraud.[12] The plaintiff also requests: 1) punitive damages against Fein on behalf of Brown and Rauso in his personal capacity for her "fraud on the court" in the state foreclosure proceedings; 2) an injunction of the state foreclosure action; and 3) a declaratory judgment that US Bank's rights in the mortgage are void.[13]

On June 23, 2013, Rauso amended the complaint, as a matter of right.[14] The defendants moved to dismiss under Rule 12(b)(1) and 12(b)(6). While their motion was pending, defendant BNC filed a notice of bankruptcy on December 13, 2013. This case was stayed on December 19, 2013. On July 21, 2014, BNC notified the court that the bankruptcy court had confirmed its reorganization plan and the automatic stay could be

---

[11] The FDCPA claims are made against Fein on behalf of Brown and/or TSST. Am. Compl., Doc. No. 18 at 22-29. The TILA claims are made against SPS on behalf of Brown. Id. at 33-35. He also seems to imply a claim(s) under the Real Estate Settlement Procedures Act (RESPA), related to the TILA claims.

[12] The FCEUA claims are made against SPS or Fairbanks and only brought on behalf of Brown. Id. at 30-33. One UTPCPL claim relates to the 2007 Forbearance Agreement and is made against SPS or Fairbanks on behalf of D & B. Id. at 36-37. The other UTPCPL claims relate to the third foreclosure notice and complaint and are brought against Fein on Brown's behalf. Id. at 37-38. The Act 6 claims are based on non-compliance related to the third foreclosure notice and suit. They are brought against Fein on behalf of TSST or against SPS on behalf of D & B. Id. at 39-40. The breach of contract claims are brought against BNC and US Bank on behalf of Brown. Id. at 41. Negligence/trespass claims are brought against Von Rosenthiel and Fein for their alleged legal malpractice on behalf of D & B and TSST. Id. at 42-43. Negligent servicing claims are brought against Fairbanks and SPS on behalf of Brown; these claims are based on a theory of "negligence per se" and the alleged violations of RESPA and TILA. Id. at 43-45. The accounting at law claim is brought on behalf of Brown against all defendants. Id. at 45. The quiet title claim is brought by Rauso, individually, against US Bank. Id. at 46.

[13] Am. Compl., Doc. No. 18 at 46-51.

[14] See Doc. No. 21.

lifted. This case was returned to the active docket on September 10, 2014. BNC was also permitted to join the defendant's motion to dismiss. The parties were ordered to supplement their briefing on the motion to dismiss.[15]

### b. Judicially-Noticed Facts From the Public Record

Both parties have asked the court to take judicial notice of certain facts located in other court documents. A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." FED. R. EVID. 201(c). Judicial notice can be taken at any stage of a case. FED. R. EVID. 201(d). Matters of public record or facts that can be accurately and readily determined to be accurate may be judicially noticed. See FED. R. EVID. 201(b); City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998). See also Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). I will take judicial notice of the information contained in two other legal actions, as requested by the parties, outlined below.

### 1. Mortgage Foreclosure Action in State Court

Both parties have asked the court to take judicial notice of the third mortgage foreclosure action pending in the Court of Common Pleas of Montgomery County (US Bank v. Brown, et al., Montco. Pa. 2012-7312). See State Court Third Foreclosure

---

[15] See Doc. No. 44. This case was originally assigned to the Honorable Edmund Ludwig. It was reassigned to me on January 13, 2015. See Doc. No. 53.

Compl., Doc. No. 30, Ex. M-3. US Bank, represented by Fein, is the plaintiff in that action. US Bank asserts it has standing to prosecute the action, as the assignee of MERS (the nominee of BNC) and as an agent for SPS.[16]

That case was filed on March 26, 2012 against TSST and Brown. That complaint claims that the transfer made from Brown to D & B and D & B to TSST, without prior written consent by the lender, violated the mortgage agreement under paragraph 18.[17] The complaint further alleges other breaches of the mortgage agreement and outlines fees and costs requested as part of the foreclosure. The complaint also outlines what steps US Bank took prior to filing the complaint, in order to comply with Pennsylvania's Act 6.

On January 29, 2013, Rauso petitioned to intervene in the action.[18] The trial court held a telephonic hearing on the motion. Judge Garrett Page, who is presiding over the state court case, ordered the transcript of that telephone conference be introduced into the record of this case.[19] The defendants ask that I take judicial notice of this transcript as well.[20]

The Montgomery County court denied the plaintiff's motion to intervene on June 10, 2013 because the court found he had no property interest in the Wood Street property

---

[16] See Assignment of Mortgage, Doc. No. 30, Ex. M-3 at Ex. F and G. US Bank granted SPS a limited POA to Fairbanks/SPS. See Power of Attorney, Doc. No. 30, Ex. M-3 at Ex. G.

[17] See Mortgage Document, Doc. No. 30, Ex. M-3 at Ex. C.

[18] See Doc. No. 30, Ex. M-8. Now Brown, Rauso, and TSST are all listed as defendants.

[19] See Doc. No. 30-1, Ex. M-9. The Mortgage contains a "due on sale" clause, which provides that Brown would need to have given the full amount due under the mortgage at the time title was transferred. Otherwise, transfer without offering the full amount would be considered a default.

[20] See Doc. No. 30, Ex. M-9.

and, therefore, did not have standing in the case.[21] Rauso appealed the decision to the Superior Court. On May 15, 2014, the Superior Court quashed the appeal as being not final and as unappealable.[22] The Superior Court denied Rauso's application for reargument on July 17, 2104.[23] Rauso appealed the intermediate court's decision to the Pennsylvania Supreme Court. The Supreme Court affirmed the Superior Court's decision to quash Rauso's appeal on December 30, 2014.[24] The third foreclosure action is still pending in the Court of Common Pleas of Montgomery County.[25]

### 2.  Prior Federal Criminal Charges Against the Plaintiff

The defendants also ask the court to take judicial notice of the fact that the plaintiff pled guilty to federal charges of mail fraud and tax evasion on July 13, 2010. See United States v. Gennaro Rauso, 2:10-cr-406-MMB. Those charges related to a scheme by which Rauso, through D & B, fraudulently obtained title to over 200 homes on the verge of mortgage foreclosure. He promised the homeowners that he would prevent foreclosure if they signed over their titles and granted him a power of attorney. He then filed bankruptcy proceedings on their behalf to stay the foreclosures. At the same time, he allowed them to remain in their homes but had them pay him rent. The homeowners believed the rent was being paid towards their mortgages. Instead, he evicted some or

---

[21] See Doc. No. 30, Ex. M-10.

[22] See Doc. No. 47, Ex. 1.

[23] See 2039 EDA 2013.

[24] See 685 MAL 2014.

[25] The underlying case was stayed pending the appeals.

simply let others' homes eventually go into foreclosure, after pocketing substantial rents. Rauso carried out this "property-title skim scheme" from 2005 through 2008. He was sentenced to 160 months imprisonment and five years of supervised release on June 20, 2011.[26]

## II.    LEGAL STANDARD

### a.  Fed. R. Civ. P. 12(b)(1): Lack of Subject Matter Jurisdiction

Under Fed. R. Civ. P. 12(b)(1), a respondent may seek dismissal of an action because the court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Rule 12(b)(1) motions may be facial or factual in nature. "In a facial attack, a defendant argues that the plaintiff did not properly plead jurisdiction, . . . [whereas] a 'factual' attack asserts that jurisdiction is lacking on the basis of facts outside of the pleadings." Smolow v. Hafer, 353 F. Supp. 2d 561, 566 (E.D. Pa. 2005)(citing Mortensen, 549 F.2d at 891). Facial attacks are similar to motions brought under Rule 12(b)(6): they are afforded the presumption that the allegations in the complaint are true. Id. District courts are only permitted to consider allegations in the complaint, exhibits attached to the complaint, and matters of public record in deciding the motions. See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

---

[26] It is not clear from the record that has been provided whether the federal charges specifically considered Rauso's involvement with Mr. Brown's mortgage. The defendants argue that Rauso took actions related to Brown's mortgage which are in line with his property-title skimming scheme. For example, on July 26, 2006, a *pro se* Chapter 13 Bankruptcy Petition was filed in the Eastern District of Pennsylvania (No. 2:06-bk-13160, E.D. Pa.), purportedly by Mr. Brown. See Doc. No. 30, Ex. M-6. During that bankruptcy, it was represented to the court that Brown lived on the Wood Street property. In fact, he was living in St. Francis County, Arkansas—as evidenced by the power of attorney notarization.

Factual challenges, however, operate differently. They are not afforded the same presumption as facial challenges. Mortensen, 549 F.2d at 891. Because a factual 12(b)(1) motion challenges the trial court's jurisdiction, the trial court has the authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. "[I]n a factual attack under Rule 12(b)(1), the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)(citations omitted). See also Cestonaro v. United States, 211 F.3d 749, 752 (3d Cir. 2000)(citing Mortensen, 549 F.2d at 891)("Because the government's challenge to the District Court's jurisdiction was a factual one under Fed.R.Civ.P. 12(b)(1), we are not confined to the allegations in the complaint (nor was the District Court) and can look beyond the pleadings to decide factual matters relating to jurisdiction."); Smolow, 353 F. Supp. 2d at 566 (citing Mortensen, 549 F.2d at 891)("A 'factual' attack asserts that jurisdiction is lacking on the basis of facts outside of the pleadings, and it invokes the Court's authority to consider any affidavits and other evidence submitted.").

The plaintiff has the burden of proof that the district court has jurisdiction over the case. Id. See also Dev. Fin. Corp. v. Alpha Housing & Health Care, 54 F.3d 156, 158 (3d Cir. 1995).

**b.  Fed. R. Civ. P. 12(b)(6): Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. In such cases, the District Court must "accept as true all of the allegations in the complaint and all reasonable inferences

11

that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir.1997). A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Because the plaintiff brings this suit *pro se*, the court must construe the complaint liberally in that plaintiff's favor. Haines v. Kerner, 404 U.S. 519, 520-21(1972); United States v. Day, 969 F.2d 39, 42 (3d Cir.1992).

## III.   JURISDICTION AND VENUE

This court has federal question jurisdiction over the plaintiff's FDCPA and TILA claims pursuant to 28 U.S.C. § 1331, 15 U.S.C. §§ 1692k(d), 1640e and 12 U.S.C. § 2614 and supplemental jurisdiction over the plaintiff's state law claims under 28 U.S.C. §1367(a).[27] Venue is appropriate under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to this actions occurred in this district. The defendants offer several jurisdictional reasons for this case to be dismissed.

### A.   **Younger** Abstention

The defendants argue that this court should abstain from hearing the plaintiff's action under Younger v. Harris, 401 U.S. 37 (1971), because the state court mortgage foreclosure case is still pending. They claim this action is either duplicative of that case

---

[27] The defendants argue that the plaintiff has waived jurisdiction in this court by intervening in the Pennsylvania state mortgage foreclosure action. According to the defendants, the plaintiff could have removed the state court action to this court. I do not see the basis for the defendants' argument. The state court case does not appear to have federal claims asserted as part of that action. The parties are not completely diverse nor does the amount in controversy appear to be met. I cannot accept this waiver argument as a reason for dismissing this case.

or that a disposition in this case could interfere with the disposition of the foreclosure proceeding.

As a general rule, a pending state court proceeding is not a reason for a federal court to decline to exercise jurisdiction. Yang v. Tsui, 416 F.3d 199, 201 (3d Cir. 2005). One exception to this rule is the abstention doctrine set forth in Younger. Id. The "Younger abstention doctrine" "espouse[s] a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). For Younger to be invoked, three prerequisites must be met: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." Lazaridis v. Wehmer, 591 F.3d 666, 670 (3d Cir. 2010)(citation omitted).[28] Younger has been applied in the context of federal cases seeking to enjoin state court foreclosure proceedings. See, e.g., Gray v. Pagano, No. 07-3433, 287 Fed.Appx. 155, 157–58 (3d Cir. Jul. 23, 2008)(affirming dismissal of complaint relating to ongoing state foreclosure action under Younger); Smith v. Litton Loan Servicing, LP, No. Civ.A.04-02846, 2005 WL 289927, at *7-8 (E.D. Pa. Feb. 4, 2005).

---

[28] There are two exceptions to Younger: 1) if the state court proceedings were brought in bad faith or to harass, or 2) "some other extraordinary circumstances exists" such as proceedings brought under a patently unconstitutional statute. Lazaridis v. Wehmer, 591 F.3d 666, 670 n. 4 (3d Cir. 2010)(quoting  Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989)). See also Gray v. Pagano, 287 Fed.Appx. 155, 158 (3d Cir. 2008)(defining exceptions as also including a case where there is an "irreparable injury [that] is both great and immediate"(citing Mitchum v. Foster, 407 U.S. 225, 230 (1972)). No exception appears to be warranted in light of the facts presented.

Many of Rauso's claims relate to the state foreclosure action and the defendants' right to foreclose on the property. Abstention under Younger may be appropriate if all the prerequisites are met.[29]

### 1.  Ongoing State Court Proceedings

First, there certainly is an ongoing state court proceeding. The state foreclosure case is still pending in Montgomery County. Though Rauso's motion to intervene in the case was denied, TSST and Brown remain parties to the case. Rauso's appeal of his denial was quashed as essentially being unripe for disposition. Once the state court foreclosure has been decided, Rauso, Brown, and TSST will need to exhaust their appellate remedies (i.e. appeal to the Superior Court and then state Supreme Court) before that case would be considered finalized under Younger. See Schall v. Joyce, 885 F.2d 101, 110 (3d Cir. 1989)("'[A] necessary concomitant of Younger is that a party [wishing to contest in federal court the judgment of a state judicial tribunal] must exhaust his state appellate remedies before seeking relief in the District Court.'"(quoting New Orleans Public Service, Inc. v. Council of City of New Orleans, 109 S.Ct. 2506, 2518 (1989)). See also Huffman v. Pursue Ltd., 420 U.S. 592, 608 (1975).  From the facts provided, the state foreclosure case as to all parties is still "ongoing."

---

[29] The plaintiff argues that abstention is not appropriate because the state and federal proceedings are not "parallel." He supports this argument with IFC Interconsult, AG v. Safeguard Intern. Partners, LLC., 438 F.3d 298, 306 (3d Cir. 2006), and Yang v. Tsui, 416 F.3d 199, 205 (3d Cir. 2005). "Parallel proceedings" are the first pre-requisite of the Colorado River abstention doctrine, not the Younger doctrine. See IFC Interconsult, AG, 438 F.3d at 305-07, and Yang, 416 F.3d at 204 n. 5. While this first prong of Colorado River is similar to Younger's first prong, "the key to Younger abstention is not the presence of parallel state proceedings, but rather the likelihood that the federal action will interfere with the ongoing state proceedings." Chiropractic America v. Lavecchia, 180 F.3d 99, 114 (3d Cir. 1999). The plaintiff also cites to Spring City Corp. v. American Bldgs. Co., 193 F.3d 165, 172 (3d Cir. 1999), for the argument that abstention isn't warranted. Again, this case pertains to Colorado River and not Younger abstention.

## 2.  Important State Interests[30]

The defendants argue that the pending state court foreclosure proceedings

implicate the Commonwealth of Pennsylvania's interest in determining property rights

and resolving issues related to real property. They contend this is an important state

interest warranting Younger abstention. I agree.

Though Younger was originally applied to criminal proceedings, it has since been

extended to non-criminal proceedings between private parties that implicate "important

state interests." See Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 10 (1987); Schall, 885 F.2d

at 107 ("Pennzoil was the first Supreme Court case to hold that Younger can sometimes

bar an injunction against a pending civil action between two private parties."). This prong

asks "if the State's interests in the proceeding are so important that exercise of the federal

judicial power would disregard the comity between the States and the National

Government." Schall, 885 F.2d at 107 (quoting Pennzoil, 481 U.S. at 10). While Younger

is not to be applied "whenever a civil proceeding is pending in state court," it should be

considered satisfied under prong two when "federal relief would render the state court's

orders or judgments nugatory." Shall, 885 F.2d at 108 (discussing Pennzoil).

Pennsylvania has both an important interest in resolving disputes related to real

property within its jurisdiction and in preserving its authority in ruling over such

---

[30] Though not raised by the defendants, I will note that the Anti-Injunction Act may also prevent this court from enjoining state court proceedings, including mortgage foreclosure actions, absent an exception to the statute. See 28 U.S.C. § 2283 ("A court of the United States may not grant injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."); Clark v. United States Bank Nat'l Ass'n, No. CIV.A. 03-5452, 2004 WL 1380166, at *3 (E.D. Pa. June 18, 2004)("The Anti– Injunction Act simply does not allow federal courts to enjoin state court proceedings, including mortgage foreclosure actions, absent the application of an exception under the statute."); In re Madera, No. 07-CV-1396, 2008 WL 447497, at *5-6  (E.D. Pa. Feb. 7, 2008);  Colahar v. Wells Fargo Bank N.A., --- F.Supp.2d ---, No. 14–426–SLR, 2014 WL 2206332, at 2 (D.Del. May 27, 2014)(same).

disputes.[31] A ruling by this court—specifically regarding the plaintiff's requests for quiet title, breach of contract, injunctive relief, and declaratory relief—would interfere with these important state interests. Prong two under <u>Younger</u> is satisfied.

### 3. Opportunity to Raise Federal Claims in State Court

The majority of the plaintiff's claims are state law claims pendant to claims under the Fair Debt Collection Practices Act (FDCPA) and the Truth in Lending Act (TILA). Most of these state law claims are duplicative of the claims raised in the state foreclosure actions or are directly implicated in the state foreclosure action such that a decision in this case could interfere in that one. The breach of contract, negligence/trespass, accounting at law, Act 6, and fraud claims involve the same issues before the state court—namely, whether US Bank and/or SPS can foreclose on the property and for how much money. Rauso's claims of "legal malpractice" by Fein are also implicated by the state court proceedings.[32] Rauso requests quiet title of the Wood Street property, an

---

[31] <u>See</u> <u>Gray v. Pagano</u>, No. 07-3433, 287 Fed.Appx. 155, 157–58 (3d Cir. Jul. 23, 2008)(affirming dismissal of complaint relating to ongoing state foreclosure action under <u>Younger</u>); <u>Healy v. Kane</u>, No. 13–4614, 2013 WL 5803806, at *6  (E.D. Pa. 2013)("The state has an important interest in resolving disputes related to real property located within its jurisdiction, as such disputes implicate matters primarily governed by state law." (quoting <u>Beck v. Wells Fargo Bank, N.A.</u>, No. 10–4652, 2011 WL 3664287, at *5 (E.D.Pa. Aug.19, 2011)); <u>Smith v. Litton Loan Servicing, LP</u>, No. Civ.A.04-02846, 2005 WL 289927, at *7 (E.D. Pa. Feb. 4, 2005)(finding that state had an important interest in resolving ejectment and foreclosure disputes under second prong of <u>Younger</u>); <u>Scott v. Mortgage Electronics Registration Systems, Inc.</u>, No. Civ.A. 04-3951, 2004 WL 1925008, at *4 (E.D. Pa. Aug. 27, 2004)(same); <u>In re Madera</u>, No. 07-CV-1396, 2008 WL 447497, at *8-10  (E.D. Pa. Feb. 7, 2008)(finding that state had important interest in enforcing its Orders and judgments); <u>Colahar v. Wells Fargo Bank N.A.</u>, --- F.Supp.2d ----, No. 14–426–SLR, 2014 WL 2206332, at 2 (D.Del. May 27, 2014)(finding that state has an important interest in resolving real estate issues and a ruling in state courts could implicate important interest if preserving state court's authority); <u>Coppedge v. Beaumont</u>, No. 10–394–GMS, 2010 WL 2382944, at *2 (D. Del. Jun. 11, 2010)(same); <u>Shipley v. New Castle Co.</u>, No. 08–554–JJF, 2008 WL 4330424, at *2 (D.Del. Sept. 19, 2008)("[The state] has an important interest in resolving real estate tax and lien issues, and ruling in the Superior Court proceeding implicates the important interest of preserving the authority of the state's judicial system."); <u>Downey v. Perrault</u>, No. 09–1018, 2009 WL 3030051, at *1 (D.N.J. Sept. 15, 2009). <u>See also</u> <u>Prindable v. Ass'n of Apt. Owners of 2987 Kalakaua</u>, 304 F.Supp.2d 1245, 1262 (D.Haw. 2003).

injunction of the state court proceedings, and a declaratory judgment on US Bank's rights in the Wood Street property.  All of these remedies, if granted by this court, would interfere with the state court's ability to resolve the pending mortgage dispute. These claims can and have been raised in the state court proceeding. The state court proceeding itself will resolve the dispute about who has what rights under the mortgage agreement and note, leaving little to nothing for this court to decide in that regard. These claims are all barred by <u>Younger</u> and will be dismissed.

Whether the federal claims under the FDCPA and TILA can be asserted in the state court mortgage foreclosure action is a different question. The ability of a plaintiff to assert rights under consumer protection statutes in a Pennsylvania mortgage foreclosure action depends upon the remedy being sought.[33] In a mortgage foreclosure action, "only those counterclaims are permitted that are part of or incident to the creation of the mortgage relationship itself." <u>Cunningham v. McWilliams</u>, 714 A.2d 1054, 1057 (Pa. Super. Ct. 1998). Counterclaims or defenses which seek to rescind the mortgage agreement may be raised as part of the mortgage foreclosure action. <u>Green Tree</u>

---

[32] Though he frames these claims essentially as malpractice claims, he is really asking for sanctions against Mr. Fein. He can just as easily move for sanctions in the state court action and, in fact, has already done so. <u>See</u> Transcript of Motion to Intervene Hearing, Doc. No. 30, Ex. M-9 at 41-42.

[33] I note that both the FDCPA and TILA provide for concurrent jurisdiction. Private actions enforcing homeowners' rights under these statutes can be brought in federal district courts or "any court of competent jurisdiction." <u>See</u> 15 U.S.C. § 1692k(d); 15 U.S.C. §1640(e). Pennsylvania has construed this language to confer authority on its courts to hear FDCPA and TILA claims. <u>See</u> <u>Itri v. Equibank, N.A.</u>, 464 A.2d 1336, 1341-42 (Pa. Super Ct. 1983) (interpreting § 1692k of FDCPA and §1640(e) of TILA as conferring concurrent jurisdiction); <u>Household Consumer Discount Co. v. Vespaziani</u>, 415 A.2d 689, 691 n. 5 (Pa. 1980)(providing that state court has concurrent jurisdiction over TILA claims); <u>Christman v. Dravo Corp.</u>, 466 A.2d 209, 390 (Pa. Super.Ct. 1983)(citing <u>Itri</u> as finding FDCPA concurrent jurisdiction and <u>Household Consumer Discount</u> as finding TILA concurrent jurisdiction). <u>See also</u> <u>Ezekoye v. Ocwen Federal Bank FSB</u>, No. 05-3862, 179 Fed.Appx. 111, 113 (3d Cir. Apr. 25, 2006)(citing <u>Itri</u> as establishing Pennsylvania courts had concurrent jurisdiction over FDCPA claims).

Consumer Discount Co. v. Newton, 909 A.2d 811, 812 (Pa. Super. Ct. 2006). However, claims seeking monetary damages for violations of consumer protection laws cannot be asserted in a mortgage foreclosure action as either a counterclaim or a defense. New York Guardian Mortg. Corp. v. Dietzel, 524 A.2d 951, 953 (Pa. Super. Ct. 1987); Fleet Real Estate Funding Corp. v. Smith, 530 A.2d 919, 925 (Pa. Super. Ct. 1987). In Pennsylvania, "[a]n action in mortgage foreclosure is strictly an *in rem* proceeding, and the purpose of a judgment in mortgage foreclosure is solely to effect a judicial sale of the mortgaged property." New York Guardian Mortg. Corp., 524 A.2d at 953 (citing Meco Realty Co. v. Burns, 414 Pa. 495, 200 A.2d 869 (1964)).[34] The disposition of a state mortgage

---

[34] In New York Guardian Mortg. Corp. v. Dietzel, the Pennsylvania Superior Court found that "[a] judgment in mortgage foreclosure action is not a judgment for money damages and therefore cannot be 'an action to collect amounts owed' or 'an action to collect the debt' as required under § 1640(h) and (e) of the Truth-In-Lending Act." 524 A.2d 951, 953 (Pa. Super. Ct. 1987). As a result, the court held that "a set-off for an alleged violation of the Truth-In-Lending Act cannot be asserted as a counter-claim in a mortgage foreclosure action." Id. In Fleet Real Estate Funding Corp. v. Smith, the Superior Court reaffirmed New York Guardian's holding and extended it. 530 A.2d 919, 925 (Pa. Super. Ct. 1987). Not only could a claim for money damages under TILA not be brought as a counterclaim in a mortgage foreclosure, it also could not be used as a defense. Id.

This rationale does not apply when the plaintiff is seeking rescission under TILA. Green Tree Consumer Discount Co. v. Newton, 909 A.2d 811, 812 (Pa. Super. Ct. 2006)(distinguishing from New York Guardian and Fleet on the basis that homeowners' TILA defense related to fraud in execution of the mortgage agreement). See also Rocco, 255 Fed.Appx. at 643 ("A claim for rescission under the Truth–in–Lending Act can be brought in a foreclosure action."); In re Soto, 221 B.R. 343, 358 n. 33 (Bankr. E.D. Pa. 1998)("[T]he rationale used by the Pennsylvania Superior Court for concluding that claims for recoupment of damages under the TILA cannot be brought in a foreclosure action in Pennsylvania does not apply to claims for rescission." (citing New York Guardian and Fleet Real Estate)); Cunningham v. McWilliams, 714 A.2d 1054, 1057 (Pa. Super. Ct. 1998)("Thus, a counterclaim in a foreclosure action is cognizable if it alleges fraud in the inducement to the mortgage, but not if it alleges fraud in the inducement to the contract of sale."). Unlike a claim for monetary damages which could be analyzed without necessarily undoing or conflicting with the foreclosure, a request for rescission could interfere with the state's disposition of the mortgage foreclosure action.

Federal courts have interpreted these cases as precluding claims for money damages for TILA violations in state foreclosure actions. See, e.g., Rocco v. J.P. Morgan Chase Bank, No. 06–2438, 255 Fed.Appx. 638, 643 (3d Cir. Nov. 28, 2007)("Claims for money damages, including recoupment claims, [brought under TILA] cannot be brought in a foreclosure action."). Federal courts have extended this rationale beyond TILA to other claims for monetary damages brought under other consumer protection statutes, such as the FDCPA and Real Estate Settlement Procedures Act (RESPA). See Laychock v. Wells Fargo Home Mortg., No. 07-4478, 2008 WL 2890962, at *6 (E.D. Pa. 2008)(explaining that a prior state court foreclosure would not preclude monetary damages under RESPA); In re Cooley, 365 B.R. 464, 474 (Bankr. E.D. Pa. 2007)(finding that New York Guardian rationale may also apply to RESPA claim for damages); In re Deitch, 522 B.R. 99, 104 (Bankr. E.D. Pa. 2014)(finding that state foreclosure

foreclosure may not necessarily preclude a consumer protection claim for monetary damages brought in a separate federal suit.[35]

The claims the plaintiff brings under the FDCPA seek monetary damages for misrepresentations made in defendant's notice of intent to foreclose on the Wood Street property or in the third foreclosure complaint itself.[36] The TILA claims also seek monetary damages for violations of that act, not for rescission of the mortgage

---

action may not preclude consumer protection law claims for damages in subsequent litigation); Kaymark v. Bank of America, et al., No. 14-1816, -- F.3d --, 5-6 (3d Cir. Apr. 7, 2015)(finding that a FDCPA claim premised on inadequacies in foreclosure complaint in pending state court foreclosure matter could proceed in federal court).

[35] See, e.g., Laychock, 2008 WL 2890962 at *6 (explaining that a prior state court foreclosure would not preclude monetary damages under TILA); In re Deitch, 522 B.R. at 104 (finding that state foreclosure action may not preclude TILA claim for damages in subsequent litigation); In re Faust, 353 B.R. 94, 103 (Bankr. E.D. Pa. 2006)(finding res judicata did not bar TILA claim brought after mortgage foreclosure because claim could not litigated in state foreclosure proceedings)(citing In re Apaydin, 201 B.R. 716, 721 (Bankr. E.D. Pa. 1996)); In re Woolaghan, 140 B.R. 377, 381 (Bankr. W.D. Pa. 1992)(finding that res judicata did not bar bringing of TILA claim after foreclosure because "state law prohibits the assertion of such a claim as a defense to a mortgage foreclosure action.").

[36] Rauso's claims both attack the accuracy of the information contained in the notice and complaint (i.e. the calculation of debt owed on the note and mortgage and whether US Bank has standing to collect on the mortgage) and the way in which that information was presented. Rauso seeks both actual damages 1692k(a)(1) and statutory damages under 1692k(a)(2)(A).

To the extent that Rauso is challenging the amount owed on the mortgage and note, those arguments are more appropriately asserted in the state court foreclosure proceeding. See Beck v. Wells Fargo Bank, N.A., No. 10–4652, 2011 WL 3664287, at *4 (E.D. Pa. Aug. 19, 2011)(dismissing FDCPA claims which alleged "nothing more than routine litigation and negotiations to obtain the amount due on a mortgage-backed loan"). Rauso also argues that the debt was "misrepresented" because US Bank does not have standing to foreclose on the property. Whether US Bank has a legal right to foreclose on the mortgage loan is to be determined by the state court. See Sherk v. Countrywide Home Loans, Inc., No. 08–5969, 2009 WL 2412750, at *6 (E.D. Pa. Aug. 5, 2009)("Whether HSBC and Alt–A had the legal right to foreclose on the mortgage loan has been determined in state court… The time and the place to challenge standing was during the pendency of the foreclosure action or afterwards in the state court where the Sherks could have raised the issue."). The foreclosure proceeding can more properly address what rights US Bank has to collect on the mortgage and note and what amounts are owed on the Wood Street property. Any determination in this action about US Bank's rights and what amounts are owed are akin to rescission-type claims and would likely interfere with the state court foreclosure proceeding on the same issue. Younger would bar claims brought under this theory.

agreement.[37] Under Pennsylvania law, the plaintiff would not be able to assert these claims in the state mortgage foreclosure action. They would not be barred by Younger.

The same rationale appears to be true of the plaintiff's analogous state law claims under the FCEUA and UTPCPL. Both are seeking damages for statutory violations, not rescission. Under Pennsylvania case law, they could not be asserted in the mortgage foreclosure. See In re Soto, 221 B.R. 343, 357 (Bankr. E.D. Pa. 1998)("As this section reveals, the only remedy available to private litigants under the UTPCPL are monetary damages. Because of this, even if the Debtor succeeded on her UTPCPL claim, she would not be entitled to have the Mortgage declared void; rather, her relief would be limited to monetary damages."); In re Randall, 358 B.R. 145, 161-62, 166 (Bankr. E.D. Pa. 2006)("While plaintiff could have litigated her claim that the mortgage loan was previously rescinded, she could not have litigated her claims for damages and recoupment under federal or state consumer protection statutes."). For this reason, I will not dismiss them under Younger.

### B. **Rooker-Feldman Doctrine**

The defendants also argue that the Rooker-Feldman doctrine serves as a jurisdictional bar. Under the Rooker-Feldman doctrine, "federal district courts lack subject matter jurisdiction to review final adjudications of a state's highest court or to

---

[37] The plaintiff titles this claim as one under TILA but also alludes to a possible violation under the Real Estate Settlement Procedures Act's (RESPA) notice requirement. See 12 U.S.C. 2605(l)(1)(A) and (B) and (b). The same rationale regarding monetary claims brought for TILA violations would apply to claims brought by the plaintiff under RESPA, with regards their availability in the mortgage foreclosure action. See Laychock, 2008 WL 2890962 at *6 (explaining that a prior state court foreclosure would not preclude monetary damages under RESPA); In re Cooley, 365 B.R. 464, 474 (Bankr. E.D. Pa. 2007)(finding that New York Guardian rationale may also apply to RESPA claim for damages); In re Deitch, 522 B.R. at 104 (finding that state foreclosure action may not preclude consumer protection law claims for damages in subsequent litigation).

evaluate constitutional claims that are 'inextricably intertwined with the state court's [decision] in a judicial proceeding.'" Blake v. Papadakos, 953 F.2d 68, 71 (3d Cir.1992) (quoting District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n. 16 (1983)); see also Rooker v. Fidelity Trust Co., 263 U.S. 413, 414 (1923). However, "a district court is not divested of subject-matter jurisdiction [under Rooker-Feldman] simply because a party attempts to litigate in federal court a matter previously litigated in state court." Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3d Cir. 2006).

In this case, the Rooker-Feldman doctrine would not be a basis to decline jurisdiction. The plaintiff is not asking this court to review a judgment by the state court. He filed this action before the state court made a ruling on his motion to intervene.[38] His claims in this case are not caused by a state-court judgment—since none has been rendered yet—but instead stem from alleged violations of law that preceded the state-court case or any finalized judgment in that case. See Turner, 449 F.3d at 547 (explaining how federal claims "*not* caused by the state-court judgment but instead attributable to defendants' alleged [federal law] violations that preceded the state-court judgment" were

---

[38] The plaintiff did amend his complaint on June 24, 2013—after the state court denied his motion to intervene. See Am. Compl., Doc. No. 18. The substance of the allegations made in the original complaint, however, did not change. In the original complaint the plaintiff asserted FDCPA, TILA, and state law claims related to the mortgage foreclosure. Some of the claims added do implicitly challenge the defendants' behavior in the state court action and/or the state court's decision to not permit him to intervene. However, I consider those claims as ones meant to obstruct the state court proceedings rather than as an appeal of the state court's decision. Therefore, they are more appropriately addressed under Younger rather than under Rooker-Feldman.

not within scope of <u>Rooker-Feldman</u> (emphasis in original)). The <u>Rooker-Feldman</u> doctrine is not a jurisdictional bar.[39]

### C. Standing

Lastly, the defendants challenge Rauso's standing to assert rights related to Brown's mortgage or the Wood Street Property.[40] Rauso claims that D & B, TSST, and Brown suffered monetary damages as a result of the defendants' "illegal actions."[41] He argues their rights, which were assigned to him, provide for these damages. Rauso would only be entitled to the same rights afforded his assignors. <u>See</u> <u>Himes v. Cameron Co. Construction Corp.</u>, 444 A.2d 98, 100 (Pa. 1982)("[A]n assignee can succeed to no greater rights than those of his assignor…").

It is not clear whether Brown, D & B, or TSST have rights in the Wood Street property.[42] This is a question put before the state court in the mortgage foreclosure action. Once that question has been answered, this court can better assess what rights

---

[39] <u>Rooker-Feldman</u> also does not bar TILA claims, which are not "intertwined" with the state court judgment. <u>See</u> <u>In re Randall</u>, 358 B.R. at 161-62 (finding that <u>Rooker-Feldman</u> is not a jurisdictional bar to TILA damage claims brought after state foreclosure because "an issue cannot be inextricably intertwined with a state court judgment if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings"); <u>In re Stuart</u>, 367 B.R. 541, 553 (Bankr. E.D. Pa. 2007) (finding that state foreclosure judgment does not bar a TILA civil damages claim under <u>Rooker-Feldman</u> because TILA claim is not "inextricably intertwined" with state foreclosure judgment but that principles of justice, comity, and judicial economy warranted abstention to prevent claim splitting). Under this rationale, the plaintiff's claims that the defendants violated consumer protection laws, seeking monetary damages for these violations, would not necessarily be barred under <u>Rooker-Feldman</u>.

[40] <u>See</u> <u>In re Schering Plough Corp. Intron/Temodar Consumar Class Action</u>, 678 F.3d 235, 243 (3d Cir. 2012)("A motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.").

[41] Am. Compl., Doc. No. 18 at 18.

[42] From the complaint, Rauso himself does not even know who has property rights in the Wood Street property at this time. He pleads most claims in the alternative (i.e. for both Brown and for TSST). His decision to assign rights from all possible property owners to himself after the state court foreclosure action had commenced also implicitly supports his own uncertainty about who holds what rights.

Rauso may have (if any) based on those assignments and whether he has standing to assert those rights in this case.[43]

Rauso also claims that he himself has a property right premised on a series of transfers of the Wood Street property: first from Brown to D & B, then D & B to TSST, and finally TSST to Rauso himself. Rauso could only have standing to assert his own rights in the property if each of these transfers or assignments were valid under the mortgage agreement and note. Rauso moved to intervene in that action, thereby putting the question of his rights to the state court.[44] Rauso himself argued in his motion to intervene that the only issue presented by his motion is whether he had standing in the state court foreclosure matter.[45] The only basis for Rauso's own property rights could be the transfers of the property or the assignments of rights.[46] As part of the mortgage

---

[43] I recognize that the right to assert a FDCPA claim may not be exclusive to the property/mortgage owner, given that four Act 6 notices were sent out. Each person receiving a notice may be entitled to assert a violation of FDCPA for misrepresenting a debt. However, none of the notices were addressed to Rauso. See Doc. No. 30, Ex. M-3 at 69-76. Three were addressed to Brown at three different addresses and one was addressed to TSST at the Collingdale address. Rauso himself was not named as a defendant in the third foreclosure action. See Doc. No. 37 at 10-36. Under the same rationale, he cannot claim any misrepresentations under the FDCPA in his own right by way of that complaint. The only way Rauso could assert claims under FDCPA are on behalf of Brown or TSST.

[44] See Transcript of Motion to Intervene, Doc. No. 30, M-9.

[45] See Doc. No. 30, M-8 at 4.

[46] The defendants also make a factual attack on the plaintiff's standing. They argue that the plaintiff's conviction in the "title-skimming scheme" imply that Brown's POA and the subsequent transfers of the Wood Street property were fraudulent. The facts regarding Rauso's conviction do not specifically indicate that Brown's property was one implicated in that scheme. The conviction raises concerns about the validity of the property transfers. However, I will decline to rule on their legal status at this time. As the plaintiff points out, the defendants cannot challenge the propriety of those transfers because they were not parties to the agreement. See Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania, 7 A.3d 278, 287-88 (Pa. Super. 2010). The fact that Rauso was convicted of federal charges regarding a "title-skimming" scheme has also been raised in the state court proceeding. US Bank argued that his prior conviction should be considered in whether Rauso had standing in that case. See Transcript of Motion to Intervene, Doc. No. 30, Ex. M-9 at 54-55. The County itself had some role in the property transfers, in that some of the title transfers and the POA were recorded. It is more appropriate that the state court determine the validity of those transfers. Mr. Brown is a party to that case and is not a party to this one. He is able to challenge the validity of the POA and subsequent transfers in that case.

foreclosure case, the state court will need to address the validity of those transfers and assignments.[47]

For these reasons, I cannot proceed to the merits of the plaintiff's remaining claims.[48] There is a chance that the state court's decision could preclude Rauso from asserting standing to bring some or all of the remaining claims in this case.[49] If I were to

---

[47] The defendants also argue that the plaintiff lacks standing to bring claims on behalf of D & B and TSST because he is not an attorney at law. Rauso brings several counts on behalf of D & B and TSST, corporations with which he has some involvement. Corporations can only be represented in federal court by licensed attorneys at law. See Dougherty v. Snyder, No. 11–2631, 469 Fed.Appx. 71, 72 (3d Cir. Mar. 21, 2012)("It has been the law for the better part of two centuries … that a corporation may appear in the federal courts only through licensed counsel." (quoting Rowland v. California Men's Colony, 506 U.S. 194, 201-02 (1993)); United States v. Cocivera, 104 F.3d 566, 572 (3d Cir. 1996) ("[T]he general rule [is] that a corporation may not be represented by other than licensed counsel…"); Simbraw, Inc. v. United States, 367 F.2d 373, 373-74 (3d Cir. 1966)(holding that a corporation must be represented by an attorney at law and cannot be represented pro se by the President of the corporation); Raker v. Bar-Bq Pit, Inc., 2013 WL 6179161, at *1 (E.D. Pa. Nov. 25, 2013)("This rule is also codified at 28 U.S.C. § 1654, which provides that '[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.'"). See also Brandstein v. White Lamps, 20 F.Supp. 369, 370 (S.D.N.Y. 1937)("Obviously plaintiff corporation could not plead and manage its case personally… nor could it manage it through an agent of its appointment who is not an attorney of the court." (quoting Mullin-Johnson Co. v. Penn Mut. Life Ins. Co. of Philadelphia, Pa., 9 F.Supp. 175 (N.D. Cal. 1934)). Rauso is not a licensed attorney at law. He does not have standing to bring these claims as a representative of the corporations. Mr. Rauso is well aware of this point. He, in fact, argued it during the hearing on his motion to intervene in state court. See Transcript of Hearing on Motion to Intervene, Doc. No. 30, Ex. M-9 at 39, 49-50.

Rauso, however, claims he is not bringing the claims as a representative of the corporations but instead as their assignee. It is not clear if the assignments are valid from what has been provided in the complaint. This is a question better answered by the state court as I have explained. I question whether an assignment of his corporations' rights would do nothing more than controvert the well-established rule that corporations cannot be represented by a pro se plaintiff. However, I will decline to dismiss those claims which are not duplicative of those raised in the state foreclosure action. Once the state court has made its rulings on what rights the parties have in the Wood Street property (thereby addressing the validity of the assignments), I will be better able to assess whether these claims stand.

[48] The timeline of who had what property rights in the Wood Street property when also could affect the plaintiff's abilities to bring those claims. Some of the claims he asserts may be barred by the statute of limitations as well.

[49] For example, Rauso asserts claims for the same offenses as assignee for both Brown and TSST. If the transfer between Brown and TSST were valid, Brown would not be able to assert those rights. Rauso as Brown's assignee could then not assert those rights. If the transfer from Brown to TSST were not valid, then Rauso as TSST's assignee or D & B's assignee could not assert rights accrued by either of those entities. Even assuming that Rauso's assignments are valid (which I hesitate to say they are), he could only assert rights as assignee for either Brown or D & B or TSST since the majority of his consumer protection claims attach to the rights of the property owner and the mortgage. Again, Rauso only would gain those rights which the assignor himself/itself has. Rauso cannot assert assigned rights for both Brown and TSST for the same conduct, as he attempts to do.

continue analyzing the plaintiff's claims, I would first need to address the validity of the transfers and the assignments in order to determine if the plaintiff has standing. My rulings on this point may contradict and/or interfere with the state mortgage foreclosure proceeding.

## IV. THE REMAINING CLAIMS WILL BE STAYED

Given that a decision on the remaining consumer protection law claims could interfere with the state court's foreclosure case, I am inclined to stay those claims until the state foreclosure action has ended. A district court may invoke the Younger abstention doctrine as to some of the plaintiff's claims but retain jurisdiction over those which Younger does not implicate. See, e.g., Addiction Specialists, Inc. v. Township of Hampton, 411 F.3d 399, 414-15 (3d Cir. 2005)(finding that some claims could be dismissed based on Younger abstention but that the district court erred in dismissing, not staying, federal claims unaffected by Younger). When a federal court determines that abstention under Younger is appropriate in order to prevent interference with a state court proceeding, the federal court should stay rather than dismiss federal claims for monetary relief and attorney's fees which will not be redressed by the state court proceeding. See id. (citing Williams v. Hepting, 844 F.2d 138, 144-45 (3d Cir. 1988)("[A] district court, when abstaining from adjudicating a claim for injunctive relief, should stay and not dismiss accompanying claims for damages and attorney fees when such relief is not

---

The defendants also argue that the transfers made without their knowledge/permission breached the agreement. Thereby, Brown was in default at the time of the first transfer because he did not pay the full amount owed at the time of the transfer. If he was in default, he likely did not have the ability to transfer the property rights, thereby invalidating the subsequent transfers. Given that there are so many outstanding questions regarding the property which the state court has already been tasked to answer, I am unable to determine standing on the plaintiff's claims until the state court has made its decision.

available from the ongoing state proceedings." (citation omitted)).[50] The plaintiff's

FDCPA, TILA, and analogous state law consumer protection claims for damages—which

are not duplicative of the state court claims and cannot be asserted in the state court

action—will be stayed in order to prevent interference with the state court proceeding.[51]

## IV.   CONCLUSION

For the foregoing reasons, the following counts will be dismissed under <u>Younger</u>

as duplicative of those presented in the state court mortgage foreclosure action:

- Count 187: an Act 6 claim made on Brown's behalf;
- Count 188: an Act 6 claim made on TSST's behalf;[52]
- Count 191 and 192: breach of contract claims made as Brown's assignee;
- Counts 193 and 194: negligence and trespass claims made as Brown's assignee and/or in his personal capacity;
- Count 197: accounting-at-law claim based on the breach of contract claim made as Brown's assignee;
- Counts 198 and 199: quiet title claims made in Rauso's personal capacity;
- Count 200: an action for "punitive damages" for Fein's "fraud on the court" made as Brown's assignee;[53]

---

[50] <u>See also</u> <u>Crane v. Fauver</u>, 762 F.2d 325, 328-29 (3d Cir. 1985); <u>Deakins v. Monaghan</u>, 484 U.S. 193, 202-03 (1988)("[T]he Court of Appeals applied the Third Circuit rule that requires a District Court to stay rather than dismiss claims that are not cognizable in the parallel state proceeding. 798 F.2d, at 635, citing <u>Crane v. Fauver</u>, 762 F.2d 325 (3d Cir. 1985), and <u>Williams v. Red Bank Bd. of Ed.</u>, 662 F.2d 1008 (1981). The Third Circuit rule is sound. It allows a parallel state proceeding to go forward without interference from its federal sibling, while enforcing the duty of federal courts 'to assume jurisdiction where jurisdiction properly exists.'").

[51] The plaintiff argues that the defendants did not request a stay and have, therefore, waived this relief. This court can impose a stay (and, in fact, is instructed to do so) according to the dictates to Third Circuit precedent if one is warranted under the principles espoused in <u>Younger</u> and subsequent precedent. <u>See, e.g.</u>, <u>Addiction Specialists, Inc.</u>, 411 F.3d at 414-15.

[52] The plaintiff argues that the deficiencies in the Act 6 notice strips the state court of subject matter jurisdiction. In September 2013, the Supreme Court of Pennsylvania squarely addressed the question of whether a deficient Act 6 or Act 91 notice would strip a court of subject matter jurisdiction in <u>Beneficial Consumer Discount Co. v. Vukman</u>, 77 A.3d 547 (Pa. Sept. 25, 2013). The court concluded these notice pre-requisites were not jurisdictional requirements. <u>Id.</u> at 553.

- Count 201: action for "punitive damages" for Fein's "fraud on the court" made in his personal capacity;[54]
- Counts 202 through 204: a request for an injunction of the third foreclosure action made as Brown's assignee;[55] and
- Count 205: a request for declaratory judgment that US Bank is not the holder of the note or mortgage.

The following counts will be stayed pending the final adjudication in the state

court mortgage foreclosure action:

- Counts 1 through 7: FDCPA claims regarding the Third Foreclosure Act 6 Notice made as Brown's assignee;
- Counts 8 through 15: FDCPA claims regarding the Third Foreclosure Act 6 Notice made as TSST's assignee;
- Counts 16 through 20: FDCPA claims regarding amount in the Third Foreclosure Act 6 Notice made as Brown's assignee;
- Counts 21 through 25: FDCPA claims regarding the amount in the Third Foreclosure Act 6 Notice made as TSST's assignee;
- Counts 26 through 32: FDCPA claims regarding the legal status of the debt in the Act 6 Notice made as Brown's assignee;
- Counts 33 through 39: FDCPA claims regarding the legal status of the debt in the Act 6 Notice made as TSST's assignee;
- Count 40: a FDCPA claim regarding the legal status of the debt in the Act 6 notice made as Brown's assignee;
- Count 41: a FDCPA claim regarding the legal status of the debt in the Act 6 notice made as TTST's assignee;
- Counts 42 through 46: FDCPA claims regarding the collection of amounts not authorized by the note through the Act 6 Notice made as Brown's assignee;

---

[53] I view this claim as a request for sanctions against Fein for her actions in the state court proceeding, not as a "punitive damages" claim as the plaintiff phrases it. As I've explained, he already has raised this issue in the state court. See Am. Compl., Doc. No. 18 at 46-48.

[54] I view this claim as a request for sanctions against Fein for her actions in the state court proceeding, not as a "punitive damages" claim as the plaintiff phrases it. As I've explained, he already has raised this issue in the state court. See Am. Compl., Doc. No. 18 at 46-48.

[55] This dismissal is made under Younger and because it appears to be moot. The plaintiff concedes in his memorandum in opposition to the motion to dismiss that this request is inappropriate. See Doc. No. 38 at 10 ("[T]his action does not seek to enjoin the state court from proceeding with THE THIRD FORECLOSURE ACTION…").

- Counts 47 through 51: FDCPA claims regarding the collection of amounts not authorized by the note through the Act 6 Notice made as TSST's assignee;
- Counts 52 through 56: FDCPA claims for misrepresentations in the third foreclosure complaint made as Brown's assignee;
- Counts 57 through 61: FDCPA claims for misrepresentations in the third foreclosure complaint made as TSST's assignee;
- Counts 62 through 65: FDCPA claims for misrepresentations of the amount in the third foreclosure complaint made as Brown's assignee;
- Counts 66 through 71: FCDPA claims for misrepresentations of the amount in the third foreclosure complaint made as TSST's assignee;
- Counts 72 through 74: FCDPA claims for misrepresentations of the legal status of the debt in the third foreclosure complaint made as Brown's assignee;
- Counts 75 through 77: FCDPA claims for misrepresentations of the legal status of the debt in the third foreclosure complaint made as TSST's assignee;
- Counts 78 through 82: FDCPA claims regarding the collection of amounts not authorized by the note through the third foreclosure complaint made as Brown's assignee;
- Counts 83 through 87: FDCPA claims regarding the collection of amounts not authorized by the note through the third foreclosure complaint made as TSST's assignee;
- Counts 88 through 113: FCEUA claims regarding the amount of the debt in billing statements (from February 9, 2011 through April 30, 2013) made as Brown's assignee;
- Counts 114 through 139: FCEUA claims regarding the use of false representations to collect a debt via account statements (from February 9, 2011 through April 30, 2013) made as Brown's assignee;
- Counts 140 through 165: FCEUA claims regarding the collection of a debt note authorized by the note (from February 9, 2011 through April 30, 2013) made as Brown's assignee;
- Counts 166 through 178: TILA claims made as Brown's assignee;
- Count 179: an UTPCPL claim made as D & B's assignee;
- Counts 180 through 183: UTPCPL claims for deceptive practices in collecting a debt made as Brown's assignee;[56]

---

[56] Rauso states that Count 183 is brought both on Brown's behalf and on TSST's behalf. I am assuming this is a mistake and that 183 is meant for Brown since it appears both Brown and TSST are meant to bring three counts under this cause of action. See Am. Compl., Doc. No. 18 at 38.

- Counts 184 through 186: UTPCPL claims for deceptive practices in collecting a debt made as TSST's assignee; and
- Counts 195 and 196: for negligent servicing of the mortgage made on Brown's behalf.[57]

An appropriate Order follows.[58]

---

[57] Rauso does not specify which assignee is entitled to these claims. He discusses Brown, so I assume they are brought on Brown's behalf. I also am not entirely clear what he means by "negligent servicing." This seems more like a breach of contract claim than one of negligence. However, it is premised on his TILA claims. Out of caution, I will stay this claim as well.

[58] Because the question of jurisdiction on the claims not barred by Younger remains unresolved, I will not proceed to review the merits of these claims under Rule 12(b)(6). After the state court proceeding is finalized, the defendants may renew their motion to dismiss based on the issue of standing and/or jurisdiction under Rule 12(b)(1) and under Rule 12(b)(6).